UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ROSE M. RAMIREZ,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | No. ED CV 07-362-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## PROCEEDINGS

Plaintiff filed this action on March 28, 2007, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on April 20, 2007. Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 11, 2007, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on August 30, 1952. [Administrative Record ("AR") at 48, 53, 62.] She has a twelfth grade education [AR at 60, 83], and past relevant work experience as an envelope stuffer. [AR at 20, 57, 83.]

On May 3, 2004, plaintiff filed her applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she has been unable to work since January 1, 1995, due to Plummer's disease, diabetes, arthritis, and depression. [AR at 16, 56-64.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 21, 22, 23, 28, 30.] A hearing was held on March 14, 2006, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 40, 303-15.] On May 18, 2006, the ALJ determined that plaintiff was not disabled. [AR at 16-20.] A request for review of the hearing decision was filed on May 27, 2006. [AR at 12.] When the Appeals Council denied plaintiff's request for review on February 23, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 5-7.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to

perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity at any time relevant to this decision."[1] [AR at 18.] At step two, the ALJ concluded that plaintiff has the "severe" impairment of "insulin dependent diabetes mellitus with peripheral neuropathy." [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work as assessed by the State Agency physicians. The ALJ noted that "the work should consist of routine, repetitive, entry level, minimally stressful work with no contact required with the general public, and only superficial interpersonal contact with supervisors and co-workers." [Id.] At step four, the ALJ concluded that plaintiff is capable of performing her past relevant work as an envelope stuffer. [AR at 20.] Accordingly, the ALJ found plaintiff not disabled, and did not proceed to step five in the process. [Id.]

/
/
/
/

---

[1]   The ALJ also determined that plaintiff did not meet the insured status requirements of the Social Security Act. [AR at 18.]

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

# V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ: (1) failed to find plaintiff's mental impairments and bowel incontinence to be legally severe; (2) improperly rejected the opinion of the treating physician; and (3) failed to properly evaluate plaintiff's subjective complaints and credibility. Joint Stipulation ("Joint Stip.") at 9. As set forth below, the Court agrees with plaintiff in part, and remands the matter for further proceedings.

**TREATING PHYSICIAN'S OPINION**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).

Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record. Lester, 81 F.3d at 830; see Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993). An examining physician's opinion based on independent clinical findings that differ from the findings of a treating physician may constitute substantial evidence. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("Independent clinical findings can be either (1) diagnoses that differ

from those offered by another physician and that are supported by substantial evidence, (citation omitted) or (2) findings based on objective medical tests that the treating physician has not herself considered." (citation omitted)). However, even if an examining physician's opinion constitutes substantial evidence, the treating physician's opinion is still entitled to deference.[3] Id.; Social Security Ruling[4] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected). The ALJ must provide specific, legitimate reasons for the rejection of a treating physician's opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); see also SSR 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

Plaintiff argues that the ALJ failed to properly consider the treating physician's opinion. Specifically, plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of plaintiff's treating physician, Dr. Eunice Bolivar. Joint Stip. at 16. In the decision, the ALJ rejected Dr. Bolivar's opinion with regard to plaintiff's sit/stand limitations because it was "not supported by any of [Dr. Bolivar's] records or accompanied by any objective evidence," and it was "persuasively rebutted by the orthopaedic consultative examiner and by the

---

[3] "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Social Security Ruling 96-2p. In determining what weight to accord the opinion of the treating physician, the ALJ is instructed to consider the following factors: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the degree to which the opinion is supported by relevant medical evidence; consistency of the opinion with the record as a whole; specialization; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

[4] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

opinions of the State Agency physicians . . .". The ALJ further noted that "[a] conclusion regarding the ability to work is partially a vocational judgment which is clearly beyond the expertise of the general practitioner completing the forms." [AR at 19.] Plaintiff contends that the reasons cited by the ALJ are insufficient. As discussed below, the Court agrees with plaintiff.

First, the ALJ determined that the opinion of Dr. Bolivar concerning plaintiff's sit/stand limitations[5] was "not supported by any of [Dr. Bolivar's] records or accompanied by any objective evidence." [AR at 19.] These conclusory assertions by the ALJ constitute the same kind of non-specific boilerplate language rejected by the Ninth Circuit as insufficient in Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the [treating] doctors', are correct." (footnote omitted)); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that the ALJ rejecting the treating physician's opinion on the grounds that it was contrary to clinical findings in the record, was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed"). In rejecting Dr. Bolivar's opinion, the ALJ failed to cite any specific evidence to show that plaintiff had lesser or no limitations with respect to sitting and/or standing/walking, or specify how Dr. Bolivar's opinion was flawed. Moreover, the ALJ's assertion that Dr. Bolivar's opinion was not supported by her records is inaccurate. Dr. Bolivar's records as well as the objective medical evidence support plaintiff's allegations that she has difficulty sitting, standing and walking. [AR at 71-73, 102, 177-79, 310-11.] Dr. Bolivar treated plaintiff from November 2003 to December 2005. [AR at 211-33.] Progress notes from this period indicate that Dr. Bolivar found abnormalities in plaintiff's extremities. [AR at 212, 214, 218, 219, 220, 221, 224,

---

[5] Dr. Bolivar found that plaintiff could sit for three hours in an eight hour day and stand and/or walk for one hour in an eight hour day. [AR at 198.] The ALJ gave more weight to the opinion of Dr. Albert Lizarraras, a consultative examiner, who found that plaintiff could sit for six hours in an eight hour day and stand and/or walk for six hours in an eight hour day. [AR at 19, 138.]

227, 228, 230, 231, 232, 233.] The record also shows that plaintiff was admitted to the San Bernardino Community Hospital on January 26, 2005, and seen by Dr. Wilson D. Gomer. [AR at 177-79.] Dr. Gomer noted that plaintiff had "[n]umbness and weakness of the extremities." [AR at 179.]

Next, the ALJ's statement that Dr. Bolivar's opinion was unsupported and not accompanied by any objective evidence triggered the ALJ's duty to seek further development of the record before rejecting the opinion. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting Smolen, 80 F.3d at 1288). If evidence from the claimant's treating physician is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). As a general rule, the record will be considered "inadequate" or "ambiguous" when a treating source has provided a medical opinion that is not supported by the evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.") (citation omitted); Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001). Here, it is unclear whether the ALJ considered Dr. Bolivar's progress notes in rejecting her opinion.[6] If, in fact, the ALJ found that Dr. Bolivar's

---

[6] In his decision, the ALJ does not discuss Dr. Bolivar's clinical examinations or the findings she noted in the progress notes. [AR at 16-20.] In the Joint Stipulation, plaintiff claims that Dr. Bolivar's opinion regarding plaintiff's sit/stand limitations is supported by "clinical evidence of lower extremity abnormalities." Joint Stip. at 17. Defendant argues that, contrary to plaintiff's contentions, Dr. Bolivar's progress notes do not support the limitations assessed,

records were ambiguous or inconsistent given that some of the progress notes indicate abnormalities in plaintiff's extremities while other progress notes indicate normal findings regarding plaintiff's extremities [AR at 211-33], then the ALJ should recontact Dr. Bolivar on remand in order to resolve these inconsistencies and fully develop the record.[7]  See 20 C.F.R. § 416.919a(b)(4) (where the medical evidence contains "[a] conflict, inconsistency, ambiguity, or insufficiency," the ALJ should resolve the inconsistency by recontacting the treating physician).

The ALJ also concluded that Dr. Bolivar's opinion is "persuasively rebutted" by the consultative orthopaedist and the State Agency physicians. [AR at 19.] Generally, more weight is given to the opinions of treating physicians because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  See 20 C.F.R. §§ 416.927(d)(2), 404.1527(d)(2). Dr. Bolivar treated plaintiff for over two years on a regular basis, prescribed medications, and performed tests. [AR at 58-59, 101, 211-33.] Given the length of treatment and Dr. Bolivar's experience with plaintiff, Dr. Bolivar had the broadest range of knowledge regarding plaintiff's medical condition. See Smolen, 80 F.3d at 1279; see also 20 C.F.R. §§ 416.927(d)(2)(i), (ii), 404.1527(d)(2)(i), (ii) (weight accorded to a treating physician's opinion dependent on length of treatment relationship, frequency of visits, and nature and extent of treatment received). The ALJ may only give less weight to a treating physician's opinion that conflicts with that of another physician if the ALJ provides sufficient specific and legitimate reasons for discounting the

---

specifically, "Dr. Bolivar's restrictions against sitting for more than three hours and standing/walking for more than one hour in an eight-hour workday." Joint Stip at 21.

[7]  If the ALJ considered Dr. Bolivar's clinical examinations and progress notes and concluded that they were unambiguous, or if the ALJ found the progress notes ambiguous and requested additional information regarding the basis for Dr. Bolivar's findings, then the ALJ would have satisfied his duty to fully develop the record. See Smolen, 80 F.3d at 1288. On remand, the ALJ should discuss his consideration of Dr. Bolivar's clinical examinations and progress notes, and specifically explain the weight he accords them.

opinion. See Lester, 81 F.3d at 830; see also Orn, 495 F.3d at 632-33. Here, the ALJ merely indicated that plaintiff's treating physician's opinion was "persuasively rebutted" by the examining orthopaedic physician and the opinions of the State Agency physicians. This general and conclusory statement does not reach the level of specificity required in order to reject the opinion of a treating physician. As such, the ALJ's statement does not support his rejection of Dr. Bolivar's opinion. See Embrey, 849 F.2d at 421-22 (conclusory reason "does not achieve the level of specificity" required to justify an ALJ's rejection of a treating source's medical opinion).

The last reason that the ALJ provided for rejecting Dr. Bolivar's opinion was that "[a] conclusion regarding the ability to work is partially a vocational judgement [sic] which is clearly beyond the expertise of the general practitioner completing the forms." [AR at 19.] This statement appears to imply that Dr. Bolivar's opinion regarding plaintiff's inability to perform certain work activities given her limitations was outside her area of practice and intruded on the ALJ's determination as to whether or not plaintiff is disabled. This reason is insufficient. The ALJ need not accept a treating physician's opinion on the legal issue of disability, as it is not a medical finding, but is a conclusion reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); see also Magallanes, 881 F.2d at 751 ("The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability."). However, this rationale does not undercut Dr. Bolivar's findings in the "Multiple Impairments Questionnaire" that plaintiff, among other things, could stand for only three hours in an eight hour day, and could sit for only one hour in an eight hour day. [AR at 198-202.] These types of assessments are within the province of a treating physician and within the scope of treatment. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (treating physicians are better able to provide a "longitudinal picture" of a plaintiff's condition and "may bring a unique perspective to the medical evidence"). Dr. Bolivar did not opine anywhere in the record that plaintiff was unable to work or was disabled, but rather assessed plaintiff's physical and mental capacity, including her ability to sit, stand, walk, manipulate objects, and tolerate work stress. [AR at 196-203.] Dr. Bolivar's assessment regarding plaintiff's ability to function is a medical assessment separate and apart from the ALJ's determination as to plaintiff's ability to work. As such, the ALJ's conclusion

that, "in completing the forms," Dr. Bolivar went beyond the expertise of a general practitioner, is unsupported. Certainly, a treating physician, like Dr. Bolivar, who has had the occasion to treat plaintiff over the course of many years is in a superior position to assess plaintiff's impairments and their impact on her ability to perform certain activities.

Accordingly, the ALJ erred by not giving any specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Bolivar's opinion. As such, remand is warranted on this issue.[8]

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider the opinion of plaintiff's treating physician. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: January 8, 2008

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[8] As the ALJ's consideration on remand of the treating physician's opinion may impact the other issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address those issues in this Order. Rather, plaintiff's impairments and subjective complaints should be re-examined in light of the remand Order.